**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| TRUDY KANE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-cv-00131-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Trudy Kane on April 17, 2013, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 26], filed by Plaintiff on September 25, 2013. Plaintiff requests that the decision of the Administrative Law Judge denying benefits be reversed or remanded for further proceedings. For the reasons set forth below, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On August 30, 2010, Plaintiff filed an application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) with the U.S. Social Security Administration (SSA) alleging that she became disabled on July 14, 2010. Plaintiff's application was denied initially and upon reconsideration. Following a hearing, Administrative Law Judge ("ALJ") Edward P. Studzinski concluded that Plaintiff was not disabled. On March 27, 2012, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for a new hearing and new decision. On July 18, 2012, ALJ Studzinski held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On September 22, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. The ALJ made these findings under the required five-step analysis:

1

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since July 14, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, rheumatoid arthritis, fibromyalgia, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with some additional limitations. She is able to sit or stand for six hours out of an eight hour workday so long as she is able to alternate positions. She is able to use her hands for both fine and gross manipulation frequently, but not constantly. She is unable to perform forceful grasping and torquing. She is liable to drop an object one to two times per work shift. She is able to perform only simple, routine, and repetitive tasks; she can perform only simple decision making (i.e., she can choose amongst a limited number of options but should not be expected to consistently come up with creative solutions to novel situations).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 14, 1966, and was 43 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

On February 2, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. On April 3, 2013, Plaintiff filed a civil complaint with this Court.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, rheumatoid arthritis, fibromyalgia, and depression. On June 13, 2011, Plaintiff's family practitioner, Dr. Corse, filled out an RFC assessment that indicated Plaintiff did not have good use of her hands and that her fine and firm grasping was limited to "occasional." On February 20, 2012, Dr. Corse completed a report indicating that Plaintiff had several limitations substantial enough to impair her ability to engage in a useful occupation. In 2010, psychotherapist Dr. Oliver treated Plaintiff for depression and stress. On August 16, 2010, Dr. Oliver completed a form indicating that Plaintiff was unable to work at that time because she was suffering from severe depression. Dr. Oliver wrote a letter in support of disability on August 31, 2010, stating that Plaintiff was experiencing fatigue, low motivation, excessive crying, difficulty concentrating, and suicidal ideation, and was unable to perform her job duties.

At the hearing, Plaintiff testified that she suffers constant pain, that she suffers cramping, numbness, and coldness in her hands if she has them elevated. She testified that she has problems gripping and that she consequently drops things about once or twice each day. Plaintiff testified

that she has problems sitting, standing, and walking for long periods of time. She stated that she has to constantly change positions because of arthritis in her hips, wrists, elbows, shoulders, and legs and that she has difficulty climbing stairs and has fallen down them several times. She also testified that she has problems sleeping at night due to pain causing her to feel severe fatigue so that she takes two or three naps during the day. Plaintiff testified that she cares for basic personal needs, but has difficulties in performing basic tasks and is in constant pain when she tries. She does minimal cleaning and goes shopping occasionally but only carries a very small amount of groceries. Plaintiff testified that she relies on others coming into her home to help her with laundry and housekeeping.

Vocational Expert Thomas Gusloff testified at the hearing. The ALJ presented the VE with a hypothetical reflecting Plaintiff's RFC. The VE testified that someone with those limitations would be unable to perform her past relevant work, but could still work as an preparer for plated products, a stuffer of toys, or a cutter and paster. The VE indicated that those jobs collectively had 4,000 positions in Indiana and 100,000 positions nationally.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

4

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *see Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

5

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed or remanded because his credibility finding is not supported by substantial evidence and fails to properly incorporate Plaintiff's subjective complaints of pain, the ALJ failed to create an accurate RFC assessment that incorporated all of the Plaintiff's limitations, and he failed to accurately present all of Plaintiff's limitations to the VE. The Commissioner argues that substantial evidence supports the decision of the ALJ and his decision should not be disturbed. The Court will address each of Plaintiff's arguments in turn.

7

### A. Credibility

Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective complaints of pain and did not provide sufficient support for his ultimate credibility finding. The Commissioner argues that the ALJ had substantial evidence to support his credibility determination and the decision of the ALJ should be affirmed.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and evidence of other factors, such as daily activities, pain, medication, treatment, and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness," the Court affords credibility findings considerable deference, overturning the decision of an ALJ only if the decision is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotations omitted); *see Prochaska*, 454 F.3d at 738. Only when the ALJ's determination lacks any explanation or support will the Court declare it to be "patently wrong," and deserving of reversal. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal quotations and citation omitted). However, the Court will not simply "rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford*, 227 F.3d at 869.

The ALJ must give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski*, 245 F.3d at 887 (quoting SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)). The ALJ may not dismiss claimant's subjective complaints of pain if "the claimant can establish a medically determined impairment that could reasonably be expected to produce the pain."

*Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Nor may the ALJ discredit "a complaint of pain simply because a plaintiff did not introduce objective medical evidence to support the extent of the pain." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, the ALJ is not required to give full credit to every statement of pain or claim of disability made by the claimant. *Id.*

As Plaintiff argues, the record is replete with evidence of medical impairments that could be expected to cause pain. However, the ALJ disbelieved much of Plaintiff's testimony about several of the specific limitations she suffered because the treatment notes do not reflect that she told physicians of these exact limitations. He wrote: "[A]t no point throughout the treatment notes is there evidence that she told a doctor that she . . . experienced 'coldness.' She also testified that she needs to take two or three naps per day and has fallen down the stairs, . . . but there is also nothing in the treatment notes to corroborate those claims." AR 29. Despite the ALJ's contention, he himself included summaries of physician notes that specifically addressed several of these symptoms. In his description of the medical evidence, the ALJ wrote that Plaintiff "presented to Shanu Kondamuri, M.D." who reported that Plaintiff stated "that an episode of pain was usually accompanied by . . . chills," along with "fatigue, weakness, [and] numbness," among other symptoms. AR 25. Although treatment notes may not include an exact number of daily naps, the ALJ included several references to Plaintiff's fatigue in his summary of the medical evidence. There are also numerous indications that Plaintiff told treating physicians that she experienced fatigue, tiredness, weakness, and numbness. The inconsistencies between the ALJ's characterization of treatment notes in different portions of his opinion, as well as his misstatements about the contents of those notes, leave the Court unable to conclude that his "determination was reasoned and supported." *Shideler*, 688 F.3d at 311 (quoting *Elder*, 529 F.3d at 413).

9

The other main reason the ALJ gave for finding Plaintiff less than credible is her daily activities. Although the ALJ did not equate Plaintiff's daily activities with the ability to sustain full time work, he said, after detailing a very basic list of self-care activities, that "her ability to perform these activities on a regular basis must be considered, and it weighs again the credibility of her allegations." AR 28. The ALJ did not explain how those activities demonstrate that Plaintiff was not experiencing the pain she claimed. The Court is also concerned with the ALJ's characterization of the activities. For example, he noted that Plaintiff is able to care for her dog, but does not mention Plaintiff's testimony that she has to buy dog food in very small bags so that she is able to carry it, uses an automatic feeder, and lets the dog out into the yard rather than taking it for walks. AR 137, 139-40. He also stated that Plaintiff can do laundry, apparently based on her testimony from the first hearing, but does not mention that at the second hearing Plaintiff testified that at that point she relied on other people to do her laundry, wash her dishes, and perform other housecleaning activities. AR 75. The ALJ also stated that Plaintiff used a weed whacker, but the treatment notes the ALJ referred to only mention a weed whacker injury to Plaintiff's calf, with no other details; there is no statement that Plaintiff was the person operating the weed whacker, let alone that she used it on a regular basis, and the ALJ did not question Plaintiff about the injury at the hearing. Furthermore, the ALJ does not explain how, even if Plaintiff did operate the weed whacker, her inability to operate it without injury indicates that she is able to successfully perform weed whacking activities, rather than supports her contentions of hand pain, weakness, and frequent dropping.

It is not apparent to the Court how the very basic self-care tasks Plaintiff performs indicates that she is any less than moderately limited in daily functioning or is exaggerating her claims of pain. *See, e.g., Zurawski*, 245 F.3d at 887 (finding that daily activities that included helping four

children get ready for school, driving them to school, washing dishes, doing laundry, preparing dinner, and helping the children with homework were "not of a sort that necessarily undermines or contradicts a claim of disabling pain"). Furthermore, although the ALJ pointed out other inconsistencies in Plaintiff's behavior and testimony, the two most significant bases for his credibility finding - the content of the medical records and Plaintiff's daily activities - are also the most troubling to the Court. Accordingly, the Court can neither conclude that the ALJ's credibility determination was well-reasoned nor determine the reasons for the weight he gave to her statements. The Court remands the ALJ's credibility decision.

**B.     Residual Functional Capacity**

Plaintiff argues that the ALJ failed to incorporate all of the Plaintiff's limitations into the RFC and failed to build a logical bridge between the medical evidence and his decision. The Commissioner argues that the ALJ thoroughly considered and discussed all the medical evidence, and that Plaintiff failed to identify any specific limitations that the ALJ improperly omitted.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the

11

> individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. The Court will not disturb an ALJ's RFC assessment unless (1) the assessment lacks substantial evidence, 42 U.S.C. § 405(g); *see also Schmidt*, 395 F.3d at 744 (substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."), or (2) the assessment fails to build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 872; *Young,* 362 F.3d at 1002. For judicial review, the reviewing Court must be able to trace the ALJ's path of reasoning. *Clifford*, 227 F.3d at 874.

The record contains, and the ALJ addressed, the opinions of two treating physicians indicating that Plaintiff is unable to work: those of Dr. Corse, Plaintiff's family practitioner, and Dr. Oliver, who treated Plaintiff for her depression and other mental health problems. The ALJ did not give controlling weight to the opinions of either Dr. Corse or Dr. Oliver.

1. <u>Mental RFC</u>

Dr. Oliver specifically opined that Plaintiff was unable to perform her job duties and needed to be on disability. The ALJ states that he gave her opinion "limited weight because . . . the ultimate issue of disability is one that is reserved solely to the Commissioner." AR 26. He gave her opinion some weight, explaining that he incorporated her assessment in part by limiting Plaintiff's activities to simple, routine tasks and few changes throughout the work day. However, that limitation is not

included in Dr. Oliver's notes and the ALJ does describe how he arrived at it.

Although it is true that a medical source's opinion that a claimant is disabled does not mean that she is disabled within the meaning of the Social Security Act, 20 C.F.R. § 404.1527(e)(1), "[t]hat's not the same thing as saying that such a statement is improper and therefore to be ignored." *Bjornson v. Astrue*, 671 F. 3d 640, 647-48 (7th Cir. 2012). Rather, the ALJ must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record," SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996), and "he was required to provide a sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636-37 (explaining that ALJ must not ignore treating physician's opinion that plaintiff "could not handle a full-time job") (citing 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)); *see also Hamilton v. Colvin*, 525 Fed. Appx 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636)). He was also required to determine what lesser weight to give it, evaluating it according to the factors enumerated in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). *Roddy*, 705 F.3d at 636-37; *Campbell*, 627 F.3d at 308; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). These factors include how well the medical source supports his opinion with relevant evidence and explanation; whether the opinion is consistent with the record as a whole; whether the source of the opinion is a specialist; the relationship between claimant and source of the opinion; and any other factors which "tend to support or contradict the opinion." 20

C.F.R. §§ 404.1527(c), 416.927(c). Instead, the ALJ stated merely that he considered Dr. Oliver's assessment, giving it limited weight.

Not only did the ALJ fail to address the factors enumerated in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c) as they applied to Dr. Oliver, but he also did not explain how he arrived at the mental limitations he incorporated in the RFC. He described the opinions of several doctors who considered Plaintiff's mental limitations. In addition to Dr. Oliver's opinion that Plaintiff was unable to work, Dr. Rini's assessment suggested below average memory, concentration, and social function. State agency psychological consultant Dr. Pressner found Plaintiff to be moderately limited in her activities of daily living and ability to maintain concentration, persistence, or pace, and mildly limited in her social functioning. The ALJ did not describe the weight he gave to Dr. Rini's assessment, gave limited weight to Dr. Pressner's assessment because it was inconsistent with the ALJ's own conclusions about Plaintiff's activities of daily living (conclusions which the Court questions, as described in the previous section), and gave limited weight to Dr. Oliver's assessment. Dr. Corse also treated Plaintiff's depression and opined that her ability to work would be severely limited, but the ALJ did not mention Dr. Corse's opinion in any discussion of Plaintiff's mental capacity for work, and gave little weight to his opinion of her physical capacity, as discussed below. The Court is unable to determine how the ALJ arrived at his conclusions regarding Plaintiff's mental capacity because the ALJ has failed to build a logical bridge between the mental health limitations expressed in the record and his ultimate RFC.

    2.    <u>Physical RFC</u>

The ALJ also gave limited weight to the opinion of treating physician Dr. Corse and disregarded his opinion that Plaintiff was unable to work. As the ALJ noted at the first hearing,

adoption of Dr. Corse's opinion regarding Plaintiff's RFC would require a finding of disability since it indicated that Plaintiff would need excessive breaks and absences. As described above, although the ALJ need not necessarily give controlling weight to Dr. Corse's opinion that Plaintiff could not work, "he was required to provide a sound explanation for his decision to reject it," *Roddy*, 705 F.3d at 636-37. The ALJ explained that he gave less weight to Dr. Corse's opinion than that often afforded to a treating physician because his findings were internally inconsistent and inconsistent with the record as a whole.

The ALJ described some specific inconsistencies between Dr. Corse's descriptions of Plaintiff's limitations and other contemporaneous reports of her functional limitations. He also concluded that Dr. Corse's opinion was internally inconsistent because Dr. Corse noted much more significant limitations in Plaintiff's abilities in February 2012 than he had included in a report from June 2011. The Court is concerned, however, that nowhere did the ALJ even mention the fact that Plaintiff's impairments are progressive and would be expected to worsen over time, nor that the record includes clear evidence that Plaintiff's physical condition in fact did worsen over the time period they reflect. *See, e.g.,* AR 811, 842; *see Roddy*, 705 F.3d at 637 (finding error where, among other things, ALJ failed to consider degenerative disease when discounting the opinion of a treating physician). In this case, the ALJ does not appear to have considered the possibility that some of the "inconsistencies" he found in the evidence of Plaintiff's impairments were a reflection of their degenerative nature, let alone that, even if Plaintiff was not fully disabled on her alleged onset date, the worsening of her symptoms meant that she may have become disabled at some point thereafter. On remand, the ALJ is directed to more fully describe the weight given to Dr. Corse's opinion of Plaintiff's abilities, specifically addressing the degenerative nature of her impairments.

15

The Court is also concerned that the ALJ may not have fully considered the combination of Plaintiff's impairments. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."); *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) ("We remind ALJs that they must not narrowly confine their review to isolated impairments when the record shows that the impairments have some 'combined effect.'"); 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to find disability.).

The ALJ discounted the opinions of the Dr. Corse and Dr. Oliver, two doctors whose medical records describe both Plaintiff's mental health and myriad physical ailments, and both of whom concluded that Plaintiff was unable to work. He also stated in the hearing that he "was not readily able to factor out which complaints were the result of rheumatoid arthritis, as opposed to fibromyalgia, as opposed to the degenerative musculoskeletal," AR 45, a statement suggesting that he did not consider Plaintiff's many physical impairments in combination, let alone the combination of her physical and mental impairments. Although the Court is not remanding on these grounds, it suggests that on remand the ALJ ensure that he follow the requirement to consider the combination of Plaintiff's impairments, including those that are not severe on their own.

The ALJ failed to build a logical bridge between the medical evidence and his conclusions about Plaintiff's RFC, and erred in failing to give a sound explanation for his rejection of the treating doctors' opinions that Plaintiff was unable to work. Accordingly, the Court remands the ALJ's RFC determination.

**C.    Vocational Expert**

Plaintiff argues that the faulty RFC led to inaccurate hypothetical scenarios presented to the VE, resulting in an erroneous assessment of Plaintiff's employability. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the economy.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto*, 374 F.3d at 474; *see also Young*, 362 F.3d at 1003 ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, new VE testimony will likely be required after the credibility and RFC determinations are corrected as described above, so the Court need not directly address Plaintiff's arguments. However, the Court is concerned with another component of the VE's testimony. The VE testified that Plaintiff would be able to perform work as a preparer for plated products, a stuffer, and a cutter and paster. Recently, the Seventh Circuit Court of Appeals has questioned the

appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published, and mainly moreover from information from 1977 – 37 years ago," noting that "[n]o doubt many of the jobs have changed and some have disappeared." *Browning v. Colvin*, No. 13-3836, – F.3d –, 2014 WL 4370648, at *6 (7th Cir. Sept. 4, 2014). Additionally, the *Browning* court expressed concern, particularly relevant in this case, that "[t]here is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Id*. at *7. That concern is particularly relevant in this case, where one of the jobs described by the VE, that of cutter-and-paster, has as its job description: "Tears or cuts out marked articles or advertisements from newspapers and magazines, using knife or scissors. Records name of publication, page and location, date, and name of customer on label, and affixes label to clipping." DOT 249.587-014. The job of cutter-and-paster is one that seems particularly likely to have changed or disappeared in the last 37 years given the shift to online publication, but, as in *Browning*, in this case " the administrative law judge accepted without comment" the VE's claim "of the number of jobs . . . the plaintiff could perform that exist in the plaintiff's area." *Browning*, 2014 WL 4370648 at *7.

The case is being remanded for other reasons described above, and new VE testimony will likely need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE. In addition, the Court recommends that the ALJ specifically ascertain the source of the VE's opinion that the jobs

identified as able to be performed by Plaintiff do, in fact, actually exist in the regional economy.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 29th day of September, 2014.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:     All counsel of record